48 CCPA

**Application of Douglas H. MORETON.**
**Patent Appeal No. 6665.**

United States Court of Customs and Patent Appeals.

March 15, 1961.

Francis C. Browne, Washington, D. C. (William E. Schuyler, Jr., Andrew B. Beveridge, Joseph A. DeGrandi, Washington, D. C., and Gerald H. Peterson, Santa Monica, Cal., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPAT-RICK.[1]

RICH, Judge.

This appeal is from the affirmance by the Patent Office Board of Appeals of the rejection of claims 2, 3, 8, 9, 13, and 14 of application Ser. 333,605, filed January 27, 1953, entitled "Method of Hydraulic Power Transmission and Lubrication." At the argument appellant's counsel withdrew claims 2, 3, and 13. The rejection is based on two references:

Caprio 2,245,649 June 17, 1941
French
Patent 856,487 Mar. 23, 1940

The first question before us is, what did the appellant invent? We next have to determine whether that invention is patentable in view of the prior art. We

I. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge*

*O'CONNELL*, pursuant to provisions of Section 294(d), Title 28, United States Code.

turn to the application for a description of the invention.

Appellant's specification first sets out the necessity of using, in many hydraulic systems, a hydraulic fluid which is suited both to the transmission of power and to the lubrication of various relatively moving parts of the system which are in frictional engagement, such parts occurring in such things as pumps, valves, pistons, cylinders, fluid motors, etc. The surfaces in frictional engagement may be of iron, steel, bronze, and natural or synthetic rubber, in any combination. The fluid must also have proper chemical and physical characteristics, such as viscosity, density, stability, non-flammability, non-toxicity, and lubricity. The requirements in many uses, for example in aircraft, may be "stringent." In short, the fluid should be well suited for power transmission in typical hydraulic systems and should also be a good lubricant for the moving parts it has to lubricate.

The statement of the invention is this:

"In accordance with my invention a method has been discovered involving a *new use* of cresyl diphenyl phosphate which makes it possible to transmit power in and lubricate the frictional parts of such hydraulic systems, and particularly in such combination including the lubrication of a combination of particular frictional surfaces with the same fluid.

\*　\*　\*　\*　\*　\*

"Although cresyl diphenyl phosphate is preferred as described above, phenyl dicresyl phosphate also may be *used,* or mixtures of these phosphates. Thus, my invention includes the triaryl phosphates containing both phenyl and cresyl radicals." [Emphasis ours.]

Thus the invention, broadly described, is, as appellant himself indicates, a *new use* for two specific, closely related, triaryl phosphates, *as hydraulic fluid* in admittedly old hydraulic systems. But since one cannot claim a new use per se, because it is not among the categories of patentable inventions specified in 35 U.S.C. § 101, it is claimed as a method, as permitted by 35 U.S.C. § 100(b). This mere matter of form should have no effect on patentability. Casting the invention in terms of method, however, appellant puts great emphasis on certain elements or frictional surfaces present in the hydraulic system, as will be seen in the appealed claims, which we have broken up into elements, as follows:

"Claim 14

"In the method of operating the hydraulic system of an aircraft having

"[A] an axial-piston pump therein for pumping hydraulic fluid through and supplying power for said system at a pressure of 3000 lbs. per square inch on said fluid of said system,

"[B] said system including valves, operating pistons and cylinders, and elastomeric packings[,] including the frictional surfaces of

"[a] steel-on-steel,

"[b] steel-on-bronze and

"[c] steel-on-butyl rubber

"lubricated by said hydraulic fluid,

"[C] the improvement which comprises operating said system and simultaneously lubricating said frictional surfaces with a fluid comprising a triaryl phosphate in which the aryl radicals are both cresyl and phenyl.

"Claim 8

"The method as defined in claim 14 in which said phosphate is cresyl diphenyl phosphate.

"Claim 9

"The method as defined in claim 14 in which said phosphate is phenyl dicresyl phosphate."

Claims 8 and 9 are specific to the two triaryl phosphates which the specification discloses as appellant's hydraulic

fluid and claim 14 is generic thereto. Except for this difference, the claims are identical and stand or fall together. No novelty is claimed for any method in the manipulative sense and it is transparently obvious that the only invention sought to be covered by the above claims is the use in an old hydraulic system, which is no part of the appellant's invention, of specific lubricating fluids.

The assertion of the specification is that "unexpected" results are obtained by the use of the fluids of the claims but it is not stated what those results are other than to say that the fluids claimed are "surprisingly satisfactory." While the presence of such statements in a specification is neither surprising nor unexpected, they carry no weight in the absence of something concrete to support them. The essence of the disclosure is that these fluids have all of the desired properties, nothing more.

The specification, the claim language, and the argument before us appear to be built up on the fact, developed in the specification, that airplane hydraulic systems commonly utilize as a source of hydraulic power a Vickers Axial-Piston Pump. Most helpful and instructive cutaway specimens of such pumps were used at the argument to demonstrate the fact that they themselves contain, without reference to the rest of the hydraulic system, all of the frictional surfaces [a, b, c] specified in the claims. Surface [a] is illustrated by ball-bearings, surface [b] by steel pistons in bronze cylinders and other bronze-to-steel bearing surfaces (which we may say is extremely common in machinery bearings generally), and [c] by a shaft seal on the pump drive shaft which is said to have a sealing element of butyl rubber. Great emphasis is placed on the contention that the use of the claimed fluids in contact with butyl rubber is not only unobvious but novel.

The asserted problem faced by appellant was to find a satisfactory hydraulic fluid to use, we shall assume, in systems employing Vickers Axial-Piston Pumps or the like which have to have their moving parts lubricated by the fluid as it flows through and is pumped by them, and as it attempts to leak past their shaft seals. If the prior art disclosed the use of the claimed triaryl phosphates in hydraulic systems of this type, the claimed "method" would be entirely lacking in novelty and be anticipated. As such is not the case, however, we are concerned with the nearness of the approach of the art to such use and whether it is close enough to suggest such use to one of ordinary skill in the art involved on the basis of the usual presumption that the art cited was known to him.

The Caprio patent is directed to lubricants and their production. While emphasis is placed on phosphoric acid esters as *additives* for other common lubricants, the disclosure is by no means limited thereto and among other things it makes repeated reference to the use of triesters of phosphoric acid *by themselves* as the sole lubricant. It states specifically that triaryl phosphates may be used with oils "as an aid to film formation, film strength and/or penetrating power, covering power, and other qualities, from less than 1% to over 99%." Use in an amount of over 99% is in accord with the statement made elsewhere in the patent that the ester "may replace all" of some other oily material normally employed. In Example V tricresyl phosphate is stated to be itself a lubricant which can be used alone as a crankcase lubricant, or in any desired proportion with a mineral oil of the desired viscosity. One would normally expect that a crankcase lubricant in use would lubricate all of the frictional surfaces named in the claims with the possible exception of the steel-on-butyl rubber surfaces. While tricresyl phosphate is the compound used in all of the specific examples except two, one of the latter specifically names one of appellant's claimed fluids, monocresyl diphenyl phosphate. Appellant points out that the ultimate compound of that example is a hard lubricant, but that is

due to the combination with other ingredients, apparently not to the cresyl diphenyl phosphate alone which, according to appellant, is fluid. The patent, after giving the general formulae of the various tri-esters of phosphoric acid, exemplifies them "by name" and there lists tricresyl phosphate, the material of most of the examples and the preferred material, as the equivalent in use of "monocresyldiphenyl phosphate," one of appellant's two claimed fluids. The patent specification concludes with the statement:

> "There are numerous formulae for lubricants for each purpose but for general purposes this invention relates to the *replacing of* a part or *all* the petroleum or other oily material with an ester of phosphoric acid." [Emphasis ours.]

We do not see how anyone interested in liquid lubricants could fail to find in this disclosure a clear teaching that monocresyl diphenyl phosphate is a good lubricant and can be used as such by itself. Appellant does not pretend to have discovered any of its other chemical or physical characteristics, such as viscosity and the like, which would presumably be known, and it is not seen why, as a known *lubricating* liquid it would not be in the category of logical materials to use in hydraulic systems of the type described in the claims.

The French patent disclosure brings the prior art even closer to appellant's use invention in teaching that tricresyl phosphate and other "compounds of the family of alcohol or phenol phosphoric esters" are better than petroleum oils as "hydraulic transmission fluid" (a species of power transmission) in hydraulic couplings. Appellant argues that this patent says nothing about lubricity. While this may be true, Caprio covers that matter thoroughly. The French patent also specifies a trixylyl phosphate, tri-(3, 4-dimethylphenyl) phosphate.

 Appellant further attempts to disparage the value of the French patent as a reference on the ground that it is a "foreign patent," and is good "for only what it clearly and definitely discloses." That statement is true with respect to any reference, patent or otherwise, foreign or domestic. There is no basis in the statute (35 U.S.C. § 102 or 35 U.S.C. § 103) for discriminating either in favor of or against prior art references on the basis of nationality. We do know that some opinions have looked askance at foreign patents but that is for the reason that the patents of some countries have been notorious for containing inadequate and incomplete disclosures. A consideration of cases will show that this type of argument has not borne fruit in this court for the past 30 years. See In re Cross, 62 F.2d 182, 20 CCPA 710; In re Crowley, 74 F.2d 753, 22 CCPA 881; and In re Eitzen, 86 F.2d 411, 24 CCPA 772.

Some of the points made in the French patent about tricresyl phosphate, which Caprio teaches to be useful for the same lubricating purposes as at least one of appellant's compounds, are that it is better for use in hydraulic couplings than the light mineral oils usually used because it is noninflammable, produces no explosive vapors, has low vapor tension at high temperatures, is stable and does not decompose at the highest temperatures of use, does not attack metals, is inert with respect to the oxygen in the air, and is odorless. These characteristics would be equally beneficial in appellant's type of system.

 Granting, arguendo, that what appellant calls the "preamble" of his claim 14, which we take to be all but the part following "[C]", is a limitation, we think the references fairly suggest using the materials in clause [C] in hydraulic systems having the metallic friction surfaces [a] and [b]. If the steel-on-butyl rubber surfaces [c] presented any real problem in the sense of deterioration of the seal by the hydraulic fluid, we can see nothing patentable in testing the available fluids, which includes those

claimed, in order to determine which one or ones would not adversely affect the particular synthetic rubber being used.

We also believe that the broad disclosures of Caprio would suggest to one skilled in this art the utility in the lubricant field of appellant's phenyl dicresyl phosphate, in view of the specific disclosure of monocresyl diphenyl phosphate. Appellant has not urged any patentable distinction as between these specific compounds.

The decision of the board is affirmed.

Affirmed.