50 CCPA

### Application of Harold E. KALTER.
### Patent Appeal No. 6916.

United States Court of Customs and Patent Appeals.
April 25, 1963.

Rich and Smith, Judges, dissented.

———————◆———————

Richard H. Bradford, Washington, D. C., Frank M. Slough and J. Helen Slough, Cleveland, Ohio, for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Com'r of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Associate Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's rejection of claims 8 and 9 of appellant's application[1] as unpatentable over the prior art.

According to the specification, the invention relates to an improvement in a prior art cycle cover in which a frame of generally pear-shaped form has its peripheral edge bent upwardly to receive the peripheral portions of an outer flexible cover, which cover is secured by the upturned peripheral portion of the frame. The improvement described is providing a beaded edge on a flexible cover of plastic or the like.

Two embodiments are described in the specification. In each, a beaded edge is adapted to fit into a complementary channel. In the first, the downwardly extending peripheral edge of the flexible cover is provided with a bead of such thickness as to "wedgingly" seat within an upturned channel of the saddle frame. The channel is crimped over the bead to enclose it. This embodiment has been called the "Fig. 4 species."

The second embodiment consists in providing a bead on the saddle frame as by tightly rolling a small portion of the downwardly directed edges of the frame. Then the cover, which may have a pad or cushion under it, is tightly fitted over the frame by means of an inwardly turned channel adapted to fit complementarily over the bead of the frame. In this form, the cover completely encases all exposed metallic areas of the saddle frame. This embodiment has been called the "Fig. 5 species."

The claims read:

"8. A cycle saddle comprising a saddle shaped sheet metal frame member and a complementarily shaped flexible cover member therefor, said flexible member being provided with a downwardly depending peripheral skirt portion, said skirt portion being provided with a beaded edge portion, the frame member having a channel shaped outer periphery adapted to wedgingly engage said beaded edge portion to lockingly secure said frame and cover members together.

"9. A cycle saddle comprising a saddle shaped sheet metal frame member and a complementarily shaped flexible cover member therefor, said flexible cover having wedge

———

1. Ser. No. 755,468, filed August 18, 1958, for "Cycle Covers."

means integrally formed therewith, said frame having integrally formed means for wedgingly engaging said wedge means whereby said cover member is tautly secured on the frame member."

The Board of Appeals relied on the following references:

| | | |
|---|---|---|
| Mellano (Great Britain) | 351,034 | June 22, 1931. |
| Bagusat et al. (Italy) | 510,368 | January 21, 1955. |

The examiner and the board found claim 8 unpatentable over Mellano and claim 9 unpatentable over Bagusat et al. They considered claim 8 to be drawn to the first embodiment wherein the frame is crimped over the bead in the flexible cover and claim 9 to be drawn to the second embodiment wherein the cover fits over the bead formed in the metal frame.

The Mellano reference discloses a cycle cover comprising a flexible cover, which may be of moulded rubber, fitted over a frame member. A number of embodiments are illustrated, the one here pertinent and relied upon below being that in which the flexible cover has "beaded ends * * * turned downwardly and secured by clamping plates * * *." The clamping plates are secured to the frame by countersunk screws and form a channel complementary in shape to the periphery of the downwardly extending cover member throughout the front and rear portions of the seat. Mellano prefers the side edges of the seat to be free and unsupported by the frame, but the possibility is recognized of employing "* * * side outer members * * * to form a complete rigid or non-extensive frame * * *."

The Bagusat et al. reference illustrates a cycle saddle comprising a sheet metal saddle shaped frame member, a cushion, and a flexible cover therefor. The sides of the frame are bent upwardly on each side to prevent lateral displacement of the soft cushion on turns, acceleration or deceleration of the cycle. The flexible cover is fitted complementarily over the rounded corner of the upwardly turned frame member so that all exposed metal portions are encased.

The appellant takes issue with the finding of the examiner, concurred in by the board, that Mellano discloses a "flexible member being provided with a, downwardly peripheral skirt portion" with a beaded edge, "the frame members having a channel shaped outer periphery adapted to wedgingly engage said beaded edge * * * to lockingly secure the frame and cover together." The solicitor asserts that it is immaterial whether or not Mellano's cover bead is "wedgingly engaged" as the "final wholly functional clause of the claim 8 could not be viewed as a structural difference." It is obvious, however, that the function of the clamps of Mellano is to provide the channel to compress or crowd the cover beads therein. This would seem to meet the "wedgingly engage" requirement of the claim.[2]

It would seem obvious that Mellano does disclose a frame with "a channel shaped outer periphery." While not describing the *full* perimeter or boundary of the frame, the channel clamps would constitute the outer periphery which engages the cover.

There is no question that a "saddle shaped sheet metal frame member," called for in claim 8, is conventional in the art. Appellant so admits in the specifi-

2. Webster's Third New International Dictionary, p. 2591:
"2. wedge * * * vt * * * 4: to cram or pack into a smaller restricted space; crowd * * *."

cation. According to the specification, the cover fits over the sheet metal saddle here in the same manner as in the prior art. The novel feature is securing the cover to the frame by "wedging" a beaded edge portion. We agree that the improvement of providing a flexible "plastic or the like" member with a beaded edge adapted to engage an upturned channel member would be obvious to one having ordinary skill in the art in view of Mellano.

Predicated on the basis of economy in cost of manufacture and assembly, appellant asserts distinctive advantage for his structure over Mellano in that clamping means and securing bolts are eliminated. It is obvious that the omission of these means is not required by claim 8. Nothing in the claim precludes the use of clamps and bolts as a substitute for the crimped metal securing means shown in appellant's drawing. We agree with the Board of Appeals statement: "Further, in our opinion, the method of assembly of the bead in the groove is an obvious matter of choice and immaterial to the appealed claims."

Claim 9 was rejected as being unpatentable over Bagusat et al., largely on the basis of a loose definition of "wedge means." Since the cover of the saddle in Bagusat et al. entirely encases the exposed frame and cushion somewhat like a slip cover, it is difficult to perceive the "wedge means" with which the frame is wedgingly engaged. The board held that "the Bagusat frame member is 'wedgingly engaging' the wedge means of the cover in the same sense as in appellant's Fig. 5." Figure 5 illustrates the second embodiment described above in which the cover encases the bead on the frame.

Appellant contends that claim 9 does not read on his Figure 5 species but only on the species where the cover bead is crimped in the frame channel (Fig. 4). In the rejection on Bagusat et al. it seems clear that the examiner and the board relied on the assumption that claim 9 was intended to be read on the Figure 5 species. The solicitor states that the appellant gave no suggestion in the amendment presenting claim 9 nor by any action in the proceedings before the examiner or the board that this claim should not be read on his Figure 5 species. Nothing in the record indicates which embodiment claim 9 was intended to encompass.

It seems clear to us that claim 9 does *not* read on the embodiment illustrated in Fig 5, yet it *does* read on the species of Fig. 4. The species of Fig. 5 does not have a "flexible cover having wedge means integrally formed therewith" as required by claim 9. The claims appear to define the same embodiment and differ only in scope. We are constrained to agree with appellant that claim 9 is not properly rejected on Bagusat et al., since the reference fails to show the cover bearing a beaded edge as called for in the claims.

The solicitor recognizes that one might "doubt the readability of claim 9 on the Figure 5 species" but contends that claim 9 is unpatentable over Mellano, stating:

"* * * Assuming arguendo that appellant's assertion [that claim 9 reads on the Fig. 4 species] is correct and a showing thereof had been seasonably made, then it is quite obvious the examiner would have simply grouped claim 9 with claim 8 as unpatentable over Mellano, claim 9 being the broader claim."

■ Appealing as this argument may be, a rejection of claim 9 based on Mellano is not before us. Only claim 8 was rejected on Mellano. We are without authority to advance new grounds of rejection, but are limited to deciding the issues before us.

Appellant points out that the ground of rejection by the examiner with affirmance by the board is "solely based on two foreign letters patent" with citation of decisions in deprecation of such patents. As was stated in In re Moreton, 288 F.2d 708, 48 CCPA 875, "A consideration of cases will show that this type of argument has not borne fruit in this court for the past 30 years."

It is our opinion that both Mellano and Bagusat et al. bear efficacy as prior art. However, Bagusat et al., though a valid prior art reference, fails to provide the teaching for which it was relied upon.

■ For the foregoing reasons, the decision of the Board of Appeals is modified to the extent that the rejection of claim 8 is affirmed and the rejection of claim 9 is reversed.

Modified.

RICH, Judge, with whom SMITH, Judge, joins (dissenting).

I must respectfully dissent with respect to the affirmance of the rejection of claim 8. It is not clear to me why the majority is affirming the rejection.

Claim 8, in my judgment, clearly distinguishes patentably from anything disclosed in or suggested by the Mellano reference which, except for the fact that it deals with cycle seats, is quite far afield from what is being claimed.

In spite of the fact that appellant's application is entitled "Cycle Covers," what is described and claimed is not a cycle cover but a cycle *seat* comprising, as the claims clearly indicate, a combination of elements related in a particular way. The basic elements are the sheet-metal frame, which is saddle-shaped, and the cover, which is a cover for the frame. The cover is not a seat but the sheet-metal "frame" is and would so function even without the cover. The invention here is not merely putting a bead on the cover but is a new way, nowhere suggested in the references, of securing the frame and cover together. The essence of this new way is the concept of a *wedging* relationship between the cover edge and the peripheral channel. There is a new functional relationship.

Claims 8 and 9 are but two different definitions of the same embodiment. Claim 9 is broader than claim 8 in calling for "wedge means" on the cover instead of a "beaded edge." But claim 8 is broader than 9 in not requiring the means that engages the bead to be "integrally formed" on the frame. These differences, however, are irrelevant to patentability over the references, as I read them.

I cannot find in Mellano a "cycle cover" or, more accurately, a cycle *seat cover* in the sense in which appellant's claims use that term or in any ordinary sense of the term. Take away from Mellano what the court is calling a "cover" and there is no seat there to be covered. Mellano does not call the element the court relies on a "cover." He calls it a "rubber support," which it is.

There is here in the structure of the claims the "new functional relationship" which, prior to the 1952 Act, was a recognized test for the presence of patentable "invention," as developed by Roberts, "Patentability and Patent Interpretation," Vol. I, p. 33:

"A new invention within the domain of industrial art is created whenever there is established a new functional relationship between any of the factors which are required for rendering such invention practically operative; or in other words, whenever any of the constituent factors of an invention belonging to an industrial art, are functionally related to each other in a novel mode."

Such new functional relationship is indicative of the unobviousness of the change made over the prior art.

The only feature I can find in Mellano which is relevant to applicant's claimed structure is the bead on the flexible rubber support, but it is a bead on the edge of a rubber *seat* which is stretched between two spaced-apart front and rear frame members in order to provide a resilient suspension for the rider. There is no "saddle shaped sheet metal frame" as called for in the claims, to be *covered* with a flexible *cover*. Mellano's rubber *is* the seat, stretched like a trampoline. It covers practically nothing. He has no saddle-shaped sheet-metal frame with a "channel shaped outer periphery" as call-

ed for in claim 8, or with "integrally formed means for wedgingly engaging said wedge means," as specified in claim 9. He *clamps* opposite edges of his stretched rubber seat with *clamps bolted, not wedged,* to curved metal strap-like front and rear *members which,* in the absence of the rubber, *would provide no seat whatever* and are neither sheet metal nor saddle-shaped, within the common meaning of those words as used in applicant's claims and specification.

I cannot agree with the rejection of the examiner, accepted by the board without discussion, and apparently also accepted by the court's opinion. The rejection of claim 8 calls for reversal as clearly as the rejection of claim 9. And should the examiner in "further proceedings" reconsider claim 9, it is, in my opinion, as clear of Mellano as claim 8.

Since Mellano has no "wedging" engagement, I fail to see *what* makes the claimed subject matter obvious.