**Melvin R. GREISER, Plaintiff,**

v.

**Edward J. BRENNER, Commissioner of Patents, Defendant.**

**Civ. A. No. 2114–64.**

United States District Court
District of Columbia.

March 25, 1966.

George Arkwright, Shlesinger, Shlesinger & Arkwright, Washington, D. C., Gibson Yungblut, Cincinnati, Ohio, for plaintiff.

Joseph Schimmel, Sol., J. F. Nakamura, Washington, D. C., of counsel, for defendant.

JACKSON, District Judge.

This is a civil action to obtain a patent under 35 U.S.C. § 145. Upon consideration of all the old and new evidence in the case, as well as the briefs of counsel, the Court finds for the defendant, and against plaintiff, and makes the following Findings of Fact and Conclusions of Law pursuant to F.R.C.P. Rule 52(a):

## FINDINGS OF FACT

1. Plaintiff Melvin R. Greiser brought this civil action under Title 35 of the United States Code, Section 145, seeking a judgment from this Court authorizing the defendant, Commissioner of Patents, to issue a patent to the plaintiff containing Claims 19 through 24 and 29 of his application for patent, Serial No. 848,238, filed October 23, 1959, entitled "Prevention of Beach Erosion and Encouragement of Land Restoration."

2. The application in suit relates to the prevention of erosion due to the action of wind and ocean waves on a sand beach and a bank at the landward side of the beach. The application discloses a revetment laid on the slope of the bank and optional adjustable groins built out into the ocean at right angles to the shore line. The lower portion of the revetment, or apron, is below the water level at normal high tide and comprises a layer of woven Saran or Fiberglas filter mats laid over the base of the bank and held down by burlap bags of ready-mix concrete hardened *in situ* by sea water. The upper portion of the revetment comprises a layer of Fiberglas filter mats laid on the remainder of the bank slope and covered with interlocking, flat concrete blocks. Both the woven Saran and the Fiberglas filter mats allow water, but not sand, to pass through the mats.

3. Claim 19 of the application reads as follows:

19. In combination with a littoral formation subject to wave action, which formation includes a bank sloping toward the water, anti-erosion means comprising a layer of thin, flexible foraminous sheet material covering a substantial area of said bank, said layer being pervious to water but substantially impervious to the substance of said littoral formation, and means for inhibiting the entrance of water beneath edge portions of said layer.

Claims 20 to 24 are dependent on Claim 19. Claim 20 calls for means on the layer of foraminous sheet material to hold it in place by gravity. Claim 21 calls for a layer of foraminous sheet material having a toe portion extending toward the water, which toe portion is covered and held in place by weighty material resistant to wave action. Claim 22 specifies closely spaced superposed bags of hardened concrete as the weighty material. Claim 22 otherwise corresponds to claim 21. Claim 23 specifies a layer of foraminous sheet material woven from strands of water-resistant subtance chosen from a class consisting of fiberglass and synthetic resin. Claim 24 specifies that the layer of foraminous sheet material is a flexible material of glass fibers having a facing of synthetic

weather-resisting substance, which facing is pervious to water but substantially impervious to the substance of the littoral formation. Claim 29 is a method claim and reads as follows:

29. A method of beach erosion control which comprises configuring a beach so as to comprise a bank sloping toward the water, and subject to wave action, covering said bank with an anti-erosion means comprising a layer of thin, flexible, foraminous sheet material, said layer being pervious to water but substantially impervious to the substance of said beach, and providing said layer with means at its edges for inhibiting the entrance of water therebeneath.

4. The defendant relies upon the following prior art patents having disclosures as described to show that the subject matter of Claims 19 to 24 and 29 is obvious and unpatentable:

(a) The British patent No. 789,644, published January 22, 1958, relates to an underwater covering for retaining a loose bed of sand against displacement by tidal or other running water. The patent discloses thin, pliable sheets of plastic material, such as polyamide or polyvinylidene chloride, laid in marginally overlapping parallel sections and held down by depositing stones or the like thereon to form the covering.

(b) The British patent to Cail, No. 4,658 of 1876, discloses concrete-filled bags in a closely spaced, superposed arrangement for an underwater structure such as a tidewater pier.

(c) The British patent to Unie, No. 820,516, published September 23, 1959, is the duplicate of a Belgian patent to Unie, No. 554,507, dated February 15, 1957. This patent states that mats are often used to protect dike slopes from being washed away, and that such mats are used at places where they are exposed to the action of water as well as of air. The patent discloses mats woven from polyamide monofilaments and points out that such mats can be so closely woven as to be practically impervious to sand but still sufficiently pervious to water. The resistance of such mats to the action of sea water is pointed out. The patent states that the mats are arranged on the slope of a dike, and that they may be sunk in place by means of bags formed on the mats and filled with stones or gravel.

5. The Unie patent teaches the use of mats impervious to sand but pervious to water, and woven from monofilaments of a synthetic resin, for preventing the slope of a dike bordering on the sea from washing away. The Unie patent suggests that mats conventionally would be used up to at least the level of the maximum high tide on a dike slope.

6. Plaintiff has stated that, in a coastal area where there is little or no beach at high tide, a bank of considerable height near the high water line, or at least within the reach of wave action under moderate wind conditions, is a "littoral formation". Insofar as erosion by wave action is concerned, there is no substantial difference between such a bank at high tide and the upper portion of a dike slope.

7. The combination of mats with stone-or gravel-filled bags for protecting a dike slope against water-caused erosion is shown by the Unie patent.

8. The stone-and gravel-filled bags taught by Unie obviously are weighty materials.

9. The principal difference between the combination of elements specified by Claims 19 to 24, and that shown by Unie, resides in the provision of "means" in the claimed combination for inhibiting the entrance of water beneath edge portions of the mat layer.

10. The undercutting effect of waves entering beneath unprotected edges of a mat would be apparent to any observer. In view of that knowledge, it would be obvious to one skilled in the art to weight down all edges subject to wave action as well as the central portion of the Unie mats.

11. Plaintiff has admitted that it is old to use concrete-filled bags as weighty material for revetments.

12. The prior art, as shown by the British patent to Cail, teaches the use of concrete-filled bags for marine constructions.

13. The concrete-filled bags shown by Cail obviously are a weighty material.

14. In view of the prior art teaching pointed out in Finding No. 12 and the obvious characteristic of concrete-filled bags described in Finding No. 13, it would be only a matter of choice to substitute concrete-filled bags for the stone- or gravel-filled bags of Unie.

15. Plaintiff has admitted that a thin, fibrous glass sheet material impervious to sand but pervious to water is not novel. In view of that fact, it would be only a matter of choice to substitute a thin, fibrous glass sheet material, as specified in Claim 24, for the closely woven, synthetic resin mat of Unie.

16. Plaintiff's method for protecting a bank, as set forth in Claim 29, would be obvious to one skilled in the art faced with the need for protecting the bank described in Finding No. 6, and having before him the teachings and suggestions of the Unie patent, as described in Finding No. 5, and the knowledge of wave action as described in Finding No. 10.

17. The mechanism of beach erosion was well known in the prior art.

18. Plaintiff's combination of a littoral formation and anti-erosion means, as specified in Claims 19 to 21, 23 and 24, would have been obvious to the worker of ordinary skill in the art having before him the teachings of the Unie patent.

19. Plaintiff's combination of a littoral formation and anti-erosion means, as specified in Claim 22, would have been obvious to the worker of ordinary skill in the art having before him the teachings of the Unie patent and the British patent to Cail.

20. Plaintiff's combination of a littoral formation and anti-erosion means set forth in Claims 19 to 24 would have been obvious in view of the prior art at the time the invention was made.

21. Plaintiff's method of beach erosion prevention set forth in Claim 29 would have been obvious in view of the prior art at the time the invention was made.

## CONCLUSIONS OF LAW

1. Any reference, patent or otherwise, foreign or domestic, is good for only what it clearly and definitely discloses. There is no basis in 35 U.S.C. § 102 or 35 U.S.C. § 103 for discriminating either in favor of or against "prior art" references on the basis of nationality. In re Moreton, 288 F.2d 708, 48 CCPA 875 (1961).

2. Claims 19 to 24 and 29 of the application in suit are unpatentable under 35 U.S.C. § 103.

3. Plaintiff is not entitled to a patent containing any of Claims 19 to 24 and 29.

4. The Complaint should be dismissed as to all of Claims 19 to 24 and 29.