47 CCPA

## Application of Earl E. FOLKENROTH.
### Patent Appeal No. 6476.

United States Court of Customs
and Patent Appeals.

March 8, 1960.

———◆———

Curtis, Morris & Safford, Truman S. Safford, New York City, Marshall M. Holcombe, Harrisburg, Pa. (William Hintze, Seattle, Wash., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Kansas City, Mo., of counsel), for Commissioner of Patents.

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of certain of appellant's claims, copied from Patent 2,765,685 for "Wire Stripper" in order to provoke an interference. The rejection is on the ground that the claims are not supported by appellant's disclosure in his application Ser. No. 628,920, filed December 17, 1956, entitled "Insulation Stripping Applicator." Claims 17–23 were appealed to the board and it allowed claim 23, affirming the examiner as to the rest. On this appeal appellant urges the allowability only of claims 18–22.

Appellant's invention relates to a part of a machine which applies electrical connectors to the ends of insulated wires. A wire end inserted into the machine causes it to go through a cycle which comprises closing a pair of notched cutters on the wire to sever its insulation a short distance from the end without cutting the metal core, closing clamping jaws on the wire and moving the jaws away from the cutters to strip the severed segment of insulation and lay the bare wire into the open end of a sheet-metal connector which has automatically been fed into the proper position, and then crimping the connector onto the wire. The apparatus with which we are here concerned is the cutting, wire-gripping and jaw-moving part. It forms a subcombination of cooperating elements in a machine which is built around what is basically a punch press having a vertically reciprocating ram which descends at the beginning of a cycle and ascends at the end of it. The movements of the ram provide the power for the movement of the other parts and a shear carried by it chops connectors off of a continuous strip for application to the wire.

O'CONNELL, pursuant to provisions of Section 294(d), Title 28 U.S.C.

There is no dispute as to any of the claims except as to the meaning to be given to the words "connected to" and "connected with." One or the other of these expressions is used with respect to either or both of two recited "means," one of which effects closing of the cutting blades and clamping jaws and the other of which effects movement of the clamping jaws away from the cutters to strip off the severed insulation. Part of each of these means consists of co-operating cam surfaces and cam followers. Both kinds of "means" are present in claim 18 which reads:

"18. A device for stripping insulation from an end of an insulated conductor comprising guide means adapted to receive an end of such conductor; cutting means disposed on one side of said guide means for receiving said conductor; gripping means disposed on the opposite side of said guide means for receiving said conductor; *means* CONNECTED TO said cutting means and to said gripping means and engageable by said conductor when the same is so received *for moving said cutting means* to a position circumscribing said conductor thereby circumferentially severing said insulation, *and for moving said gripping means* into gripping engagement with said conductor; *means* CONNECTED TO said cutting means and to said gripping means *for subsequently moving said gripping means away from said cutting means* thereby stripping said severed insulation from said end of said conductor; and means for releasing said gripping means and said cutting means from said conductor thereby releasing said conductor." [Emphasis ours.]

The problems with respect to this claim are typical of those related to the other claims on appeal and it will suffice to discuss this one. It presents the worst case against appellant in that it uses "connected to" twice. We have capitalized the critical words and have italicized the "means" to which they relate.

The first "means" which must be "connected to" both the cutting and gripping means consists of the mechanism which operates (moves) the cutters and the gripping jaws. The second "means" which must be so connected moves the gripping jaws as a unit away from the cutting jaws as a unit to strip the wire. The Patent Office position is that neither the first nor second "means" is "connected to" the "cutting means" or "gripping means."

Taking up the first "means," we find that it consists, so far as it operates the cutters, of the ram, two pivoted rocker arms which have ram-engaging rollers, a spring which holds the top ends of the rocker arms together, and pins on the lower ends of the rocker arms which engage in slots in the blades so as to move the blades. When the ram descends it engages the rollers to move the arms and push the blades together. This much of the first "means" is clearly "connected to" the cutting means, which we construe to be the two cutting blades, by the connections between the blades and the rocker arm pins. Insofar as the said first "means" operates the clamping jaws or "gripping means," we find it to consist of the same ram, a block bolted to the ram and carrying a pivot pin on which a clamp holder is pivotally mounted, the latter carrying the clamping jaws and having at its lower end follower pins which run in angular slots in stationary cams so as to swing the holder, as it descends together with the ram, away from the cutters to strip the wire. At the same time, as the follower pins run downwardly in their cam slots, the ends of the gripping jaws strike other stationary cam surfaces which close the jaws on the wire. Clearly this part of the means is "connected to" the gripping means, which we construe to be the clamping jaws, inasmuch as those jaws are slidably mounted in the holder and carried thereby.

Turning now to the second "means" of claim 18 which must be "connected to"

the cutting and gripping means, we see that it is defined as mechanism which subsequently moves the gripping means away from the cutting means. We have already described this mechanism since the same parts that cause the jaws to grip cause them, upon further movement, to move away from the cutter. These parts include the clamp holder with its cam-following pins and the stationary cams containing the angular slots in which they run, the movement called for by this clause being produced by the cams upon the descent of the holder with the ram. This second "means" is attached to the gripping means in that the holder carries the gripping jaws. It is the holder which moves them away from the cutters. This second "means" is also connected to the cutting means in that the cutting blades are slidably mounted in a guide attached to the press bed which also supports the ram. The clamp holder is carried by the ram and the cams which swing it are fixed to the same bed, in consequence of which, relative movement of cutters and clamps results. The bed is, therefore, a direct and close connection between the blade holder and the clamp holder cams and this is a connection between the cutting means and means for moving the grippers away from the cutting means.

The reason why the Patent Office held that the claims do not read on appellant's structure was, apparently, that the two "means" which had to be connected to the cutting and gripping means involved cam surfaces and cam followers which it felt are merely in sliding contact and not "connected" in the sense of being tied or fastened together, citing prior decisions of this court in support of that view.

■ None of those decisions involved a situation such as we have here where the question is whether a "means" is "connected to" something when that "means" consists of an assemblage of parts which, taken as a whole, is clearly "connected to" the part in question. In our opinion, the mere *inclusion* in such an assemblage of a pair of elements co-acting in the manner of a cam and cam-follower does not open a gap, so to speak, which destroys the connection of the total "means" to something else.

The decisions cited by the Patent Office are In re Stroedter, 68 F.2d 741, 21 CCPA 843; Annernen v. Penn, 69 F.2d 653, 21 CCPA 988; and In re Crosby, 157 F.2d 198, 34 CCPA 701.

In Stroedter the claim called for one specific element, a pitman, "connected to" two other specific elements, a support and a shaft. Annernen v. Penn [69 F.2d 655] construed the term "means mechanically connecting" one specific element to another specific element, a quite different situation from the one we now have before us. In re Crosby [157 F.2d 199] also dealt with a different question, the existence in the prior art of "a connection between" one specific element and another.

Part of the Patent Office argument is that "This court has determined the meaning of the term 'connected' in construing claims in mechanical arts, as indicated by the cases cited above." This shows a misconception of the function of this court, which is not to substitute itself for the lexicographers. In the cases cited the court merely exercised its proper function of deciding in two ex parte cases whether applicants' claims read on the prior art and whether in an interference a count read on an alleged actual reduction to practice. In doing this, the court was not writing definitions of words. It was construing claims. The meaning of words is often shaded by the context in which they are used. The meaning of a word, such as "connected," in one particular context is not a question of law as to which a ruling in one case would be controlling in other unrelated cases. It is a question of fact to be determined in the light of the relevant surrounding circumstances in each case. It is one thing to say that a single specific element is "connected to" something else and it is a quite different thing to say when a "means," consisting of a plurality of elements, is "connected to" another "means." The Pat-

ent Office has here relied on the cases as standing for the proposition that for one thing to be "connected to" another it must be joined, linked, tied up or fastened to it by something intervening.

Assuming, without admitting, that the cited cases do stand for that proposition, it is our view that the two "means" with which we are here concerned, considered as entireties, are so "connected to" the cutting means and gripping means. Since this is dispositive of the issue we need not consider other points which would be merely cumulative.

 Being of the opinion that claims 18–22, all of those on appeal, are supported by appellant's disclosure, the decision of the board affirming the rejection of those claims is reversed.

Reversed.