53 CCPA

**Application of Ivar JEPSON.**
**Patent Appeal No. 7575.**

United States Court of Customs and Patent Appeals.
March 17, 1966.

Kirkpatrick, J., dissented.

Neil M. Rose, George R. Clark, Chicago, Ill. (Homer R. Montague, Washington, D. C., of counsel) for appellant.

Joseph Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel) for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRK-PATRICK.*

SMITH, Judge.

This appeal presents two issues for determination: first we must decide, in light of the arguments presented to this court, the opinions of the Board of Appeals, and the record, whether the appealed claims [1] stand rejected on 35 U.S.C. §§ 102 or 103; and second, whether the rejection may be sustained.

We hold on the first issue that the rejection is under the terms of 35 U.S.C. § 103 and on the second issue that it cannot be sustained.

*The Invention and the Prior Art*

The invention defined by the appealed claims is an oscillating water sprinkler for watering lawns. Claim 1, quoted by the board, describes the invention when considered with Figs. 1 and 5 herein reproduced:

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. In application Ser. No. 188,407, filed Apr. 18, 1962, entitled "Lawn Sprinkler." The examiner allowed three claims. Claims 1–9 are here on appeal.

1. An oscillating sprinkler comprising an elongated spray tube, [38] carrier means [46, etc.] for said spray tube pivotal about a horizontal axis [54], a water motor [inside housing] operable to oscillate said carrier about said axis, means [40, 42] mounting said spray tube on said carrier for selective manual positioning [47] at various angles to said axis, and means [40, 46, etc.] defining a water conduit for supplying water to said spray tube, said last-mentioned means being water sealed [40, 42, 46] at any of said various angles of positioning of said spray tube.

According to appellant,

*The present invention provides means for varying the length and width of the spray pattern while at the same time utilizing a rigid spray tube.* This variation in the width of the spray pattern is accomplished by rotating the spray tube about an axis which, in the preferred embodiment, is perpendicular to the axis about which it oscillates. As a result of this rotation, the spray tube is not always parallel to the axis of oscillation as in the conventional oscillating sprinkler.

The appealed claims stand rejected in view of the teachings of one patent:

Flad        288,222        Nov. 13, 1883

The teachings of Flad, describing an "Apparatus for Sprinkling Streets," are best understood by considering portions of Figs. 8 and 10 of that reference:

The parties agree that Flad shows an apparatus for sprinkling streets wherein rack h causes oscillation of nozzle G (Fig. 8) and curved plates g² may be moved for adjustment of the width of the spray pattern. The board concerned itself with a single structural feature of Flad. It observed that if the nozzle of Flad, which Flad stated was "screwed" to hollow shaft F, was rotated the *width* of the spray pattern could be controlled in proportion to the amount of rotation without utilizing the curved plates g².

### The Rejection

The board in its decision reversed the rejection of the examiner. It then stated:

Under the provisions of Rule 196(b) claims 1 to 9 are rejected as unpatentable over the Flad patent. * * *

The board did not elaborate further on its rejection of "unpatentable over" and, so far as relevant here, considered the appealed claims together.

Appellant, interpreting the board's decision in his petition for rehearing, stated:

> While the rejection seems to tacitly admit that there is no actual disclosure or contemplation in the Flad patent of rotating the nozzle G with respect to the hollow shaft F, the position is taken that Flad "provides a means which mounts to spray tube on the carrier F for selective manual positioning." The gist of the rejection appears to be that there is no invention involved in providing an adjustable connection between the spray nozzle and the oscillating carrier.

The board, in its decision on rehearing, stated in answer:

> Appellant states * * * that our rejection involves "providing" an adjustable connection in Flad. This is in error since our rejection is based on the fact that a threaded connection is of itself an adjustable connection and the claims read directly on Flad without anything being "provided" therein.

The board also stated the rejection was proper despite the "different structure" shown in the reference in view of the structure appellant "broadly claimed."

Appellant argues that while he suspected the basis of the board's new rejection was section 103 after the board's first decision, the language ("the claims read directly on Flad") used by the board in its second opinion clearly establish that section 102 was intended.

■ The solicitor's arguments in rebuttal are fourfold: First, it is argued that "The Board's rejection of claims 1–9 'as unpatentable over the Flad patent' signifies a section 103 rejection," citing in support thereof the *dissenting* opinion in In re Hughes, 345 F.2d 184, 185, 52 CCPA 1355, "particularly footnote 5. '[sic, footnote 2?]'" We are unconvinced by this argument or the citations in support thereof. The majority opinion in *Hughes* rejected a like argument and even the dissenting opinion in *Hughes* does not support this proposition. Moreover, the solicitor's argument here that "unpatentable over" per se means section 103 is contrary to the position argued by the solicitor in In re Molnar, PA 7590, presently pending before this court. In *Molnar* it is urged that "unpatentable over" per se means *both* sections 102 and 103, citing In re Foster, 343 F.2d 980, 52 CCPA 1808. The term "unpatentable over," standing alone, means only that the claims are rejected in view of the reference and each case must be examined to ascertain the precise grounds of rejection.

■■ Second, it is argued that appellant had adequate notice of the statutory ground of rejection, meaning section 103, and his remedy, if any, was by way of Rule 196(b), citing the following principle from *Hughes*, supra, 345 F.2d at 185:

> * * * And if the new ground of rejection is properly identified as such, the applicant is in no way prejudiced, for he has the benefit of the adequate procedural safeguards of Rule 196(b).

The above principle is applicable where new grounds of rejection are *properly identified as such*. This argument is of no help in surmising what statutory ground of rejection the board intended.

Third, it is argued as follows:

> Before the Patent Office, at least, this lack of concern over statutory sections is common. Many practitioners realize that success in establishing some difference over a given reference merely invites consideration of a larger question, viz. whether or not "the differences * * * are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art * * *." Hence, the more comprehensive section 103 question is oftentimes argued, rather than leave the job half done.

Apparently this argument has two aspects: first, it is offered in candor and honesty to explain the practice before the

Patent Office; and second, it seeks to establish that appellant argued the "section 103 * * * question rather than leave the job half done." We think it would be directly contrary to the express terms of 35 U.S.C. § 132, to condone such a "lack of concern" if it does exist and, further, would be contrary to our decision in *Hughes,* supra, to *assume* that appellant argued section 103.

Finally, it is argued as follows:

* * * Contrary to appellant's position * * * the aforesaid portion of the Board's statement concerning readability of the claims on Flad should not be broadly construed, out of context and in a literal sense. * * * there remain acknowledged and manifest differences which belie any reasonable inference that the Board was characterizing its rejection here as being under 35 U.S.C. 102.

Proceeding in the proper manner to determine the statutory ground of rejection intended, from the records and briefs before us, and considering the oral argument, we are convinced that the board intended section 103. As we find that this rejection may not be sustained we need not consider the possible prejudice to appellant arising from the failure of the Patent Office to comply with 35 U.S.C. § 132. It must be said, however, that there is no justifiable reason that a case should appear in this court absent a statement of the position of the Patent Office as to the statutory grounds of rejection. It is contrary to statute (35 U.S.C. § 132) and involves a needless waste of time of the appellant and the Solicitor's Office, briefing and arguing the question; and of the court's time, deciding the question.

### The Merits of this Appeal

Appellant's position is clear: the subject matter defined in the italicized portion of appealed claim 3, set forth below, differs from Flad and would not be obvious in view of Flad.

3. An oscillating sprinkler comprising an elongated spray tube, carrier means for said spray tube pivotal about a horizontal axis, power means driving-ly connected to oscillate said carrier means about said axis, a water conduit extending from said spray tube transversely of the length of said spray tube, and *means mounting said water conduit on said carrier means for rotation about an axis perpendicular to said horizontal axis to vary the size of the spray pattern of said sprinkler, said means mounting said water conduit including a rotary water seal and retaining means for holding said spray tube in any selected rotary position with respect to said carrier means.*

Appellant explains:

The italicized portion of the claim represents the significant aspect of the claim by means of which it defines patentably over the prior art. Owing to the fact that Appellant's invention in its broadest aspect involves the addition of the spray pattern width adjustment means to a conventional oscillating sprinkler, the elements of claim 3 which are not italicized above are admittedly conventional and old in the art of oscillating sprinklers. The other claims on appeal are similar in reciting more or less conventional oscillating sprinkler structure and including in the combination the novel mounting of the spray tube which provides the heretofore unknown width adjustment of the spray pattern.

Each and every one of the claims on appeal recites the structure permitting this adjustment between the spray tube and the oscillating means supporting the spray tube. * * *

The solicitor argues:

* * * There is no warrant for assuming Flad did not appreciate that a normal pipe joint connection between carrier F and nozzle G would afford suitable positioning of the latter. On the other hand, he [Flad] was apparently unaware of its possible use in varying the width of the spray pattern in appellant's manner, relying instead on slide plates g[2] therefor. This is of no consequence here, since an ordinary threaded pipe joint between his carrier F and nozzle G could be used to effect a

width adjustment in appellant's manner. This was recognized by the Board (R–59). "A mechanical patent is anticipated by a prior device of like construction and *capable of performing the same function*," Carnegie [Steel Co.] v. Cambria [Iron Co.], 185 U.S. 403, 424 [22 S.Ct. 698, 46 L.Ed. 968] * * *.

We do not think that the Flad device, as interpreted by the solicitor, is of like construction which performs the same function as appellant's device nor does it make obvious "a rotary water seal and retaining means for holding said spray tube in any selected rotary position with respect to said carrier means," as defined in claim 3. We think it is too strained an argument to maintain that an adjustable width spray pattern may be obtained in the Flad device, by initially ignoring the teachings of Flad, and construing a "screwed" connection to mean "a rotary water seal and retaining means." See In re Thornhill, 305 F.2d 463, 49 CCPA 1179.

■ Considering the differences between the subject matter sought to be patented and the teachings of the *single* prior art reference of record, we do not find that the subject matter *as a whole* would have been obvious at the time the invention was made to a person having ordinary skill in this art. 35 U.S.C. § 103.

The decision of the board is reversed.

Reversed.

KIRKPATRICK, Judge (dissenting).

I cannot agree with the decision of the majority as to the non-obviousness of the invention. The majority opinion points out that the sprinkler nozzle of Flad is attached by a threaded connection to his oscillating carrier, and it appears to me quite obvious that, if the nozzle is turned on its thread, the width of the spray pattern will vary. The fact that Flad preferred other means to vary the width of the pattern does not affect the obviousness of this physical fact.

Given this disclosure, providing a joint which permits the rotation of the nozzle, means to make the joint water-proof and means to keep it in the desired position, produces no new functions with respect to the parts individually nor any new or surprising result of the parts assembled as a whole. The Supreme Court in Graham v. John Deere Co., 86 S.Ct. 684, February 21, 1966, has set forth the tests for obviousness under 35 U.S.C. § 103 which, when applied to the facts here, should, I believe, result in the affirmance of the board.