Modified.

59 CCPA

**Application of Harold J. W. PAYNE.**
**Patent Appeal No. 8755.**

United States Court of Customs and Patent Appeals.

Aug. 17, 1972.

Harry B. Keck, Pittsburgh, Pa., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. John W. Dewhirst, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, and ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

Payne appeals from the decision of the Patent Office Board of Appeals sustaining the rejection of claim 9 of his application [1] under 35 U.S.C. § 103. We affirm.

*The Invention*

Appellant's appealed claim deals with a process for making foam-filled building panels. A sheet of a material such as steel, plasterboard or asbestos is first formed into the shape desired for one wall of the panel. The top of that sheet is coated with a foaming plastic material such as polyurethane. The sheet of material which is to form the other wall of the panel is then placed over the foaming plastic. The second sheet is held in a fixed position relative to the first sheet until the foaming material has come in contact with the second sheet and foaming has essentially stopped. The appealed claim reads:

9. The method of preparing a foamed-filled building construction panel which comprises:

applying a coating of foaming plastics composition to the top surface of a first panel sheet;

delivering the coated first panel sheet with the said plastics composition actively foaming to a panel assembly station;

securing a second panel sheet to said first panel sheet in fixed juxtaposed relation therewith and with the said foaming plastics composition between the two panel sheets and whilst the said plastics composition is actively foaming; and

retaining the said two panel sheets in said fixed juxtaposed relation until the said plastics composition engages the said second sheet and essentially ceases its active foaming,

1. Serial No. 674,317, filed October 10, 1967.

whereby the said two panel sheets become firmly bonded by the foamed plastics composition.

### The Prior Art

Claim 9 was rejected as unpatentable over a patent to Voelker.[2] The patent deals with processes for making "rigid polyurethane foam sandwich" panels; particularly panels with improved dimensional stability. Apparently, previously known foam sandwich panels had poor dimensional stability on ageing. Voelker states that that instability was caused by the formation of ellipsoidally-shaped cells during foaming. According to Voelker "with passage of time the [ellipsoidal] cells tend to become more nearly spherical and, in becoming more spherical, impart a change in the thickness, length and/or width of the rigid polyurethane foam panel."

Voelker combats the formation of ellipsoidal cells by subjecting the panel to compression while the polyurethane is foaming. The steps in Voelker's preferred embodiment are understood with reference to his Figure 1:

*Fig. 1.*

[A6208]

The foam precursor material is deposited on the top of a facing sheet 11 and another facing sheet is placed on top. The sandwich than traverses "creaming zone 14, rising zone 15 and gel strength development zone 16" before reaching dimensional stabilization zone 17. There the sandwich is subjected to pressure from belt 18 and pressure plate 23. From zone 17, the sandwich goes to curing zone 24 "in which the temperature of the rigidizing foam is maintained hot enough to bring about the substantially exhaustive reaction" of the chemicals which form polyurethane.

In his brief before the board, appellant discussed the state of the art as follows:

> Various methods of producing prefabricated foam-filled building construction panels are known in the prior art. These methods can be separated into two distinct types.
>
> TYPE I: In one method type, a foamed plastics composition, in liquid state, is introduced between a pair of continuous ribbons of sheet material while the ribbons are moved in unison at a selected speed. Examples of this method type will be found in U. S. patents 2,866,730; 2,983,962; 3,174,887.
>
> TYPE II: In the second method type, two sheets are supported by a jig in clamped, spaced-apart relation and a foamed plastic composition, in a liquid state, is introduced therebetween and allowed to expand and cure. Examples of the second method type

2. U.S. Patent No. 3,231,439, issued January 25, 1966.

will be found in U. S. patents 3,090,078; 3,203,042; 3,203,043.

Appellant considers that the process of claim 9 is neither a Type I process nor a Type II process. The Voelker process is classified as a Type I process.

## Opinion

Appellant singles out the "essential differences" as being that "Appellant *secures* the two sheets in a *fixed* juxtaposed relation and *retains* the two sheets in the said *fixed* juxtaposed relation." Before the board, appellant stated:

> In the VOELKER zone 17, the thickness of the sandwich is *reduced* from 5 to 40 per cent. Yet in the succeeding process, the foam core *expands beyond* the thickness of the zone 17. The Examiner mentions the Action I (the compression), but fails to acknowledge the required consequent Action II (a reexpansion).

> Clearly, VOELKER'S ribbons 11, 12 do not remain in " . . . fixed juxtaposed relation. . ." as required by Appellant's Claim 9.

We think that Voelker discloses securing or placing the sheets in a fixed juxtaposed relation by means of belt 18 and pressure plate 23 in the dimensional stabilization zone 17 and retaining them in that position through the duration of their stay in that zone. They remain in a fixed juxtaposed relation, for they do not move either vertically or horizontally *relative to each other*. We also find that retaining the sandwich in the compression stage until active foaming ceases would have been obvious in view of Voelker. In discussing the compression stage, Voelker states:

> The [foam sandwich] precursor is retained in this condition *while gelation and curing progress until the sandwich can be cut and handled. Any further* expansion of the polyurethane foam precursor tends to bring about an increase in the diameter of the thus established spheres instead of stretching the composition to form the elliptical cells. * * * [Emphasis ours.]

Appellant's other arguments concerning alleged differences between the claimed process and that of Voelker are not of sufficient merit to warrant review.

The Patent Office has never clearly stated that appellant's admissions concerning the prior art discussed above were relied on as a basis for rejection of the claim. As the solicitor states:

> * * * [T]he subject matter of appealed claim 9 has been consistently rejected as being unpatentable over Voelker under 35 U.S.C. § 103. No other rejection has appeared anywhere in the record.

Yet, in the discussion of that rejection in the examiner's answer, the examiner gratuitously stated "In fact, any material difference between the Type II method and that defined in claim 9 escapes the Examiner." Appellant's "Type II" is also mentioned in the board opinion. On the basis of these "semi-rejections," and for other reasons, appellant spent much of his brief alleging that he has been denied procedural due process because he was not informed of the basis of the rejection and that 35 U.S.C. § 132 has not been complied with because he was not supplied with the "information and references" necessary to judge "the propriety of continuing the prosecution of his application." Cf. In re Hughes, 52 C.C.P.A. 1355, 345 F.2d 184 (1965). However, with the view we take of the rejection based on Voelker under 35 U. S.C. § 103, which was always clearly in the case, we do not reach those arguments.

Affirmed.

ALMOND, Judge (concurring).

While I agree wholeheartedly with the result reached in the majority opinion, my reasons for affirming are somewhat different from those expressed by the majority. Unlike the majority, I would reach the issue designated as "the semi-rejections." Not only do I think that

the rationale set forth in "the semi-rejections" is a part of the rejection before us, but also I think it a more persuasive reason for affirming than that adopted by the majority.

Voelker illustrates a Type I method. Claim 9 is directed to a Type II process. While it may very well have been obvious to modify Voelker in the manner suggested by the majority to meet the claim, such straining is unnecessary in this case. Claim 9 is clearly unpatentable over the Type II art which is exemplified by appellant's own discussion of it, the references cited by appellant, and the state of the art discussed in Voelker (which he claims to have improved upon).

What's more, the examiner and the board specifically used that rationale for rejecting the claim. The examiner in his Answer stated:

> It appears to the Examiner that what applicant is asserting as an improvement over the Voelker method is, in effect, what Voelker urges is a part of the prior practice. * * * In fact, any material difference between the Type II method and that defined in claim 9 escapes the Examiner.

Likewise, the board in affirming the examiner stated:

> The Examiner relies on the art which is prior to the reference, and which the latter improves by adding a step of reducing the thickness of the foamed structure prior to final expansion and curing of the foam. * * * We see nothing unobvious in positioning the second panel over the first panel *after* the foaming has begun, instead of before, the latter arrangement being old prior to Voelker as well as in the patents listed in appellant's brief * * * under "Type II."

Appellant complains that this rejection was improper under 35 U.S.C. § 132 because he has had no opportunity to confront such prior art. This is an odd argument indeed for, except for Voelker, it is appellant himself who has cited the prior art and discussed it. The prior art method designated as Type II is clearly explained in the record even though no one reference is specified as representing it. The fact that it is gleaned from appellant's own discussion of the prior art, as well as the reference's discussion of the prior art, is insignificant. The art is in the case, the rejection over it was clearly made, and the rejection is a sound one. While appellant, in his brief before the board, stated that "The present method is neither a Type I process nor a Type II process," he has not as of yet explained how claim 9 differs from his own discussion of what Type II prior art shows. It is suggested that the reason for this is that he cannot. Claim 9 is directed only to that which was well known in the art long before appellant's application was filed.

In addition to the reasons given by the majority, I would affirm for the reasons just expressed.